IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELIZABETH MORT and ALEX RODRIGUEZ, | ) ) | |
| | ) | C.A. No.: 10-01438 |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| LAWRENCE COUNTY CHILDREN AND YOUTH SERVICES; LAWRENCE COUNTY, CHRISSY MONTAGUE, Lawrence County Children and Youth Services Caseworker; and JAMESON HEALTH SYSTEM, INC. | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## BRIEF IN SUPPORT OF MOTION TO DISMISS

AND NOW comes one of the defendants, Jameson Health System, Inc., by and through its attorneys, Dickie McCamey & Chilcote, P.C., John C. Conti, Esquire, Richard J. Kabbert, Esquire, and J. Brian Lynn, Esquire, and hereby submits the following Brief in Support of Motion to Dismiss:

## I.    BACKGROUND

Plaintiffs' case revolves around Jameson Health System's (hereinafter Jameson) reporting of a pregnant mother's (plaintiff Elizabeth Mort) positive drug test result for opiates to Lawrence County Children and Youth Services ("CYS"), and the subsequent decision of CYS to seek to have the plaintiffs' child temporarily taken into protective custody.

Pursuant to the allegations in the Amended Complaint, without admitting or denying said allegations:  On April 26, 2010, plaintiff was admitted to Jameson for the delivery of her child. (Amended Complaint at ¶35.)  Shortly after admission, plaintiff voluntarily submitted a urine

sample for drug testing, pursuant to the policy of Jameson. (Amended Complaint at ¶36.) The initial urine drug screen was positive for opiates, a known narcotic. (Amended Complaint at ¶38.) There are no allegations that plaintiff was taking any prescribed opiates that would render her drug test results positive. Based on the positive initial drug screen for opiates, in accordance with Jameson policy, plaintiff's urine underwent a confirmatory drug test. (Amended Complaint at ¶42.) Again, the confirmatory test results were that plaintiff tested positive for opiates. (Amended Complaint at ¶42.) Jameson then informed CYS that plaintiff tested positive for opiates. (Amended Complaint at ¶45.) With regard to Jameson, there are no additional factual allegations of any allegedly improper conduct beyond the drug testing standard used to identify positive drug test results, and its reporting of the drug test results to CYS.

Plaintiff was discharged from Jameson on April 29, 2010, and plaintiffs and their child returned to their home. On April 30, 2010, CYS petitioned the Court of Common Pleas of Lawrence County for an order permitting plaintiffs' child to be taken into emergency protective custody. (Amended Complaint at ¶54.) The Court issued an Order allowing the child to be taken into protective custody. (Amended Complaint at ¶60.) Accordingly, on April 30, 2010, plaintiffs' child was removed from plaintiffs' home. (Amended Complaint at ¶61.) Jameson did not participate in the drafting or presentation of the petition, and had no knowledge of the Order until after the fact. Sometime after plaintiffs' child was taken into protective custody, plaintiff alleged that she failed the drug test at Jameson because she consumed a bagel containing poppy seeds before her drug test. On May 5, 2010, CYS indicated its intent to dismiss its petition for emergency custody, and plaintiffs' child was returned to their home. (Amended Complaint at ¶86.)

On October 28, 2010, plaintiffs filed a Complaint in this matter.  On December 1, 2010, plaintiffs filed a four (4) count Amended Complaint, which directs three (3) counts against Jameson: (1) conspiracy to violate plaintiffs' Fourteenth Amendment rights; (2) negligence; and (3) false light invasion of privacy.  For the reasons that follow, all of plaintiffs' claims against Jameson should be dismissed pursuant to Rule 12(b)(6).

## II.    STANDARD OF REVIEW

A Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the allegations in the Complaint.  Under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), a claim must be dismissed pursuant to Rule 12(b)(6) if the plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face."  *See also Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).

The Court accepts all well-pled material allegations as true and draws all reasonable inferences therefrom in the non-moving parties' favor.  However, a Court will not accept bald assertions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See In re Rockefeller Ctr. Props., Inc. Secs. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n. 8 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. *Twombly*, 550 U.S. at 555 (*citing Papasan v. Allain*, 478 U.S. 265 (1986)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

In resolving a 12(b)(6) motion, a court may look beyond the Complaint to matters of public record, including court files and records, and documents referenced in the Complaint or

3

essential to a plaintiff's claim which are attached to either the Complaint or the defendant's motion. *Spence v. Brownsville Area Sch. Dist.*, 2008 U.S. Dist. LEXIS 55026, *7 (W.D. Pa. July 15, 2008) (*citing Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

## III.   ARGUMENT

**A.   <u>Plaintiffs' federal conspiracy claim should be dismissed because plaintiffs fail to plead the requisite elements of this claim.</u>**

In Count II, plaintiffs assert a claim of "Conspiracy to Violate Plaintiffs' Fourteenth Amendment Rights."   Plaintiffs' Amended Complaint alleges that defendants, including Jameson, "entered into a combination, agreement or understanding to violate plaintiffs' constitutional rights under the Fourteenth Amendment by carrying out, through Jameson, a policy of drug-testing all obstetrical patients, which resulted in the removal of plaintiffs' child from their custody without reasonable suspicion that she had been abused or was in imminent danger of abuse."   (Amended Complaint at ¶101.)   Plaintiffs further allege that "[t]he aforementioned conspiracy violates 42 U.S.C. § 1983." (Amended Complaint at ¶105.) Plaintiffs, however, fail to sufficiently plead a claim under § 1983, and as such, this claim must be dismissed.[1]

With regard to pleading requirements generally, after the Supreme Court's decision in *Bell Atlantic Corporation v. Twombly*, "it is no longer sufficient to allege mere elements of a cause of action; instead 'a Complaint must allege facts suggestive of [the proscribed] conduct.'" *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at

---

[1] To the extent plaintiffs claim, in the alternative, that they are asserting a conspiracy under 42 U.S.C. § 1985, this claim also fails because plaintiffs are required to plead that the defendants' conspiracy was "motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons of the equal protection of the laws." *Slater v. Susquehanna Cnty*, 613 F.Supp.2d 653, 661 (M.D. Pa. 2009); *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).  Plaintiffs fail to make any such allegation.

563 n.8).  Accordingly, conclusory allegations are no longer sufficient to withstand a Rule 12(b)(6) challenge.  In *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1951 (U.S. 2009), the Supreme Court clarified that "we do not reject these bald allegations on the ground that they are unrealistic or nonsensical. . . . It is the conclusory nature of [such] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."

With the aforementioned standards in mind, it is well established that in order to state a claim under § 1983, a plaintiff must allege that the defendant was acting "under color of state law" with respect to the allegedly unconstitutional deprivation.  In other words, a plaintiff must allege that there was state action.  *Great Western Mining & Mineral Company v. Fox Rothschild, LLP*, 615 F.3d 159 (3d Cir. 2010).  To allege that a defendant is a state actor, a plaintiff must show "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  *United States v. Classic*, 313 U.S. 299, 326 (1941).  There are no allegations in the Amended Complaint that Jameson is a state actor, and indeed, Jameson is a private entity.

Under specific circumstances, a private party can be deemed a state actor.  "[A] private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a 'state actor' for purposes of the Fourteenth Amendment."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (U.S. 1982).  Under these circumstances, the conduct may be characterized as a conspiracy to violate a plaintiff's rights under 42 U.S.C. § 1983.  However, "[a] private action is not converted into one under color of state law merely by some tenuous connection to state action."  *Growman v. Township of Manalpan*, 47 F.3d 628, 638 (3d. Cir. 1995).  No such circumstances exist in this matter such that Jameson could be characterized as a state actor, so any claim of a conspiracy fails as a matter of law.

In order to plead conspiracy under § 1983, a plaintiff must allege sufficient facts **suggesting that there was a mutual understanding among the conspirators to take actions directed toward an unconstitutional end**. *DiNicola v. DiPaolo*, 945 F.Supp. 848, 856 (W.D. Pa. 1996) (emphasis added). "[A] bare assertion of conspiracy will not suffice." *Twombly*, 550 U.S. at 556. Moreover, in order to plead conspiracy adequately, "**a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose**." *Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1166 (3d Cir. 1989), *abrogated on other grounds by Beck v. Prupis*, 529 U.S. 494 (2000).

*Great Western Mining & Mineral Company v. Fox Rothschild, LLP*, 615 F.3d 159 (3d Cir. 2010) aptly demonstrates the requirements above. The *Great Western* plaintiff alleged that its losses in state court civil proceedings were the result of a conspiracy between the defendants (attorneys, law firm, and an alternative dispute resolution company) and various state court judges. The plaintiff alleged that favorable rulings were given by the judge in exchange for the judges' future employment as arbitrators. The court properly refused to consider claims of "a corrupt conspiracy," "an agreement," or "an understanding in place between the defendants," as said claims were mere legal conclusions. *Id.* at 178. Moreover, the plaintiff's claim failed to allege that the defendants did or said something to the judges to create an understanding that favorable rulings could result in the judges' future employment. *Id.* at 178-79. Instead, the factual allegations merely described unilateral actions on the part of the judges. *Id.* at 179. Furthermore, the Complaint did not plead facts suggesting that a meeting of the minds occurred between the defendants and the judges. *Id.* The Complaint merely set forth a "conclusory allegation of agreement at some unidentified point [which] does not supply facts adequate to

show illegality." *Id.* Additionally, the plaintiff "failed to allege except in general terms the approximate time when the agreement was made, the specific parties to the agreement (i.e., which judges), the period of the conspiracy, or the object of the conspiracy." *Id.* Accordingly, the plaintiff's § 1983 conspiracy claim was improperly pled, and the court affirmed the trial court's denial of the plaintiff's motion for leave to amend the Complaint.

Plaintiffs in this case similarly fail to meet the requisite requirements for pleading a conspiracy. **The only allegations that go beyond mere conclusory allegations are directed to Jameson's drug testing policy.** Plaintiffs set forth procedures involved in Jameson's drug testing policy, and allege that Jameson and CYS cooperated "in the development of Jameson's drug-testing policy . . ." (Amended Complaint at ¶¶102-104.) These allegations, however, are entirely insufficient to set forth a constitutional conspiracy claim. Plaintiffs do not allege that the drug testing of plaintiff violated her constitutional rights. Indeed, plaintiffs concede that mother-plaintiff voluntarily submitted a urine sample for drug testing. (Amended Complaint at ¶36.)

The entire basis for plaintiffs' Fourteenth Amendment claim is the temporary taking of plaintiffs' child into protective custody. However, there are no factual allegations, however, regarding the object of a conspiracy between these defendants and the deprivation of plaintiffs' rights, i.e., no allegations that Jameson conspired with CYS for the purpose of having plaintiffs' baby taken into protective custody. Moreover, there are no allegations that Jameson's drug testing policy was done for the purpose of a conspiracy between defendants to have plaintiffs' child taken into protective custody. Furthermore, there are no allegations that Jameson took any part in the legal process to have plaintiffs' child into protective custody. Again, the only underlying factual allegations are that Jameson had a policy of drug testing pregnant mothers and a policy of reporting positive drug test results to CYS. These allegations are entirely insufficient

to demonstrate that these defendants conspired to take plaintiffs' child into protective custody, and accordingly, plaintiffs' Fourteenth Amendment claim (Count II) must be dismissed.

**B.      The state law claims should be dismissed because Jameson is immune from liability under 23 P.S. § 6318 of the Child Protective Services Law.**

In Count III of plaintiffs' Amended Complaint, plaintiff Mort asserts a "negligence" claim against Jameson.  Plaintiff Mort's negligence claim avers that Jameson was negligent and used an improper "cut-off" level for its opiate drug testing standards, alleging that Jameson should have utilized a higher cut-off level. (Amended Complaint at ¶112.)  Further, it is alleged that Jameson was negligent in reporting the drug test results that were based on allegedly improper cut-off levels. (Amended Complaint at ¶112.)  In Count IV, plaintiff Mort asserts a "false light invasion of privacy" claim based on the reporting of the drug test results.  These state law claims must be dismissed, because Jameson is immune from liability for state law claims based on the immunity provision of the Child Protective Services Law.  *See* 23 P.S. § 6318.

"There is no more worthy object of the public's concern" than the welfare of children. *Wyman v. James*, 91 S. Ct. 381, 386 (U.S. 1971).  In accordance with this important concern, Pennsylvania maintains a statutory scheme (the Child Protective Services Law, hereinafter "CPSL") to promote the well being of children.  "[T]he purpose of the Child Protective Services Law is to bring about quick and effective reporting of suspected child abuse . . . and to prevent further abuse of the children . . ."  *In the Interest of J.R.W.*, 631 A.2d 1019, 1021 (Pa. Super. 1993).  There are various issues that require reporting to an appropriate county agency, including reporting of an infant who is born and identified as being affected by illegal substance abuse, and circumstances in which it is suspected that a child is a victim of child abuse.  23 P.S. §§ 6311 & 6386.  There are potential criminal penalties for failing to report.  23 P.S. § 6319.

In order to promote the goals of the CPSL, it provides immunity for various persons and entities, including hospitals, under a broad array of circumstances.  The statute provides immunity as follows:

> (a) GENERAL RULE.-- **A person, hospital,** institution, school, facility, agency or agency employee **that participates in good faith in the making of a report, whether required or not, cooperating with an investigation,** including providing information to a child fatality or near fatality review team, testifying in a proceeding arising out of an instance of suspected child abuse, the taking of photographs or the removal or keeping of a child pursuant to section 6315 (relating to taking child into protective custody), and any official or employee of a county agency who refers a report of suspected abuse to law enforcement authorities or provides services under this chapter, **shall have immunity from civil and criminal liability that might otherwise result by reason of those actions.**
>
> (b) PRESUMPTION OF GOOD FAITH.-- For the purpose of any civil or criminal proceeding, the good faith of a person required to report pursuant to section 6311 (relating to persons required to report suspected child abuse) and of any person required to make a referral to law enforcement officers under this chapter shall be presumed.

23 P.S. § 6318.

Importantly, and at issue for the purposes of this Motion to Dismiss, the statute provides immunity for "the making of a report, whether required or not."  By providing a good faith report to CYS related to the welfare of a child, Jameson is immune from the state law claims under 23 P.S. § 6318.

Claims barred by immunity may be properly dismissed on a Rule 12(b)(6) motion. *Wallace v. Abell*, 318 Fed. Appx. 96, 99 (3d Cir. 2009) (affirming dismissal of claims under Rule 12(b)(6) based on immunity); *Williams v. City of Phila.*, 2010 U.S. Dist. LEXIS 76164 (E.D. Pa. 2010) ("Dismissal under Rule 12(b)(6) is proper when a doctrine of immunity . . . bars the

suit."); *Whitfield v. City of Philadelphia*, 587 F. Supp. 2d 657, 668 n.17 (E.D. Pa. 2008) (stating

that immunity may be raised in a Rule 12(b)(6) motion).

With regard to immunity in the context of the CPSL, in *Fewell v. Besner*, 664 A.2d 577

(Pa. Super. 1995), defendant physician was treating the plaintiff during an involuntary

commitment. The plaintiff told the defendant that her son's death was not an accident as

previously disclosed, and that she had suffocated her son. The defendant conveyed this

information to the county coroner, resulting in the plaintiff being charged with homicide. The

plaintiff filed suit against the defendant seeking damages for emotional distress. The trial court

dismissed the plaintiff's claims on preliminary objections, as the defendant was immune from the

plaintiff's claims under 23 P.S. § 6318. *Id.* at 578. The plaintiff appealed, and the Superior

Court affirmed. *Id.* at 581. The court held that even though the defendant was not required to

provide a report under the CPSL, he was nonetheless entitled to immunity under the statute:

> Even though Dr. Besner was not subject to the MPSL's [CPSL]
> reporting requirements, he informed the Coroner of the
> circumstances surrounding the death of appellant's infant son and
> acted in good faith in so doing. Appellant also had another child at
> home who could have been the victim of abuse. Moreover,
> appellant does not allege that Dr. Besner lacked good faith in
> making the report. Clearly, **Dr. Besner's interest was to carry out
> his duties under the CPSL and prevent any further abuse. The
> express purpose of the CPSL would have been breached if Dr.
> Besner had not reported the incident.** *See,* 23 Pa.C.S.A. §
> 6302(b); *In the Interest of J.R.W.*, 428 Pa. Super. 597, 631 A.2d
> 1019 (1993) (stating that the express purpose of the CPSL is to
> prevent further abuse of children through the use of quick and
> effective reporting of suspected abuse).

*Id.* at 581 (emphasis added); *see also Caswell v. BJ's Wholesale Company*, 5 F.Supp.2d 312

(E.D. Pa. 1998) (holding that retail photography lab was not required to report suspected issues

of child abuse, but that they were immune from state law claims under CPSL for reporting to the

police an individual that sought development of potentially explicit child photographs).

Similarly, in *Heinrich v. Conemaugh Valley Memorial Hospital*, 648 A.2d 53 (Pa. Super. 1994), the plaintiffs filed suit against the defendant healthcare providers for corporate negligence, defamation, and infliction of emotional distress, based on the reporting of suspected child abuse to Cambria County CYS. The defendant healthcare providers filed preliminary objections raising the immunity provision of the CPSL. The trial court sustained the preliminary objections under the immunity provision, and the Superior Court affirmed. *Id.* at 57. The Superior Court noted that the CPSL provides for criminal penalties where an individual required to report under the Act, such as a healthcare provider, fails to report suspected abuse: "We cannot fault Appellees, given the criminal penalty imposed for failing to report suspected child abuse, from making a report under these circumstances." *Id.* at 60. With regard to whether the defendants acted in good faith, the plaintiff alleged in the Complaint that the defendants acted maliciously, contending that these allegations were sufficient with regard to the defendants' bad faith and that it was an issue of fact for a jury. *Id.* at 58. The court disagreed, and concluded that general allegations regarding maliciousness were insufficient. *Id.* Based on the circumstances alleged in the complaint, good faith was satisfied "as a matter of law." *Id.* at 59; *see also Jones v. Snyder*, 714 A.2d 453, 456 (Pa. Super. 1998) ("Whether a person has acted in good faith by reporting potential abuse under the CPSL must be judged against an objective standard rather than by alleged motives or allegations of maliciousness").

Plaintiffs allege that Jameson was negligent in reporting the positive opiate drug test results to CYS. However, plaintiffs concede that the drug test results demonstrated that the results were positive for opiates (Amended Complaint at ¶42). The reporting of the positive results were done in good faith pursuant to the CPSL, as such, Jameson is immune from suit. 23 P.S. § 6318.

For the reasons set forth above, Jameson is immune from liability on plaintiff Mort's state law claims of negligence and false light invasion of privacy (Counts III and IV), and as such, these claims should be dismissed.

**C.      Plaintiff Mort's negligence claim should be dismissed because plaintiff Mort is not entitled to recover emotional damages in the absence of physical injury.**

Plaintiff Mort's negligence claim (Count III) alleges that plaintiff Mort "suffered harm, including but not limited to, emotional and psychological pain and suffering and injury to her reputation." (Amended Complaint at ¶113.)  There are no allegations, however, regarding physical injuries suffered by plaintiff Mort.  While plaintiff Mort refers to her claim as "negligence," it is unclear as to whether she seeks to recover on the basis of a traditional negligence claim or a negligent infliction of emotional distress claim.  In either situation, based on the allegations in the Amended Complaint, this claim must be dismissed.

"**In an action for negligence there can be no recovery for mental suffering except it be founded upon physical injury . . .**" *Corcoran v. McNeal*, 161 A.2d 367, 373 (Pa. 1960) (emphasis added).  Because there are no allegations of physical injury, plaintiff's negligence claim must be dismissed.

In the alternative, even if the "negligence" count is treated as a negligent infliction of emotional distress claim, the claim must be dismissed.  In order to sustain a cause of action for negligent infliction of emotional distress, again, a plaintiff must demonstrate some type of physical injury.  Several cases demonstrate this requirement.

In *Banyas v. Lower Bucks Hospital*, 437 A.2d 1236, 1239-40 (Pa. Super. 1981), the court ruled that there could be no cause of action for negligent infliction of emotional distress because the plaintiff's Complaint sought recovery for severe mental anguish and emotional stress, but did

not show any physical harm. The *Banyas* Court relied on the Restatement (Second) of Torts §
436A:

> § 436A. Negligence Resulting in Emotional Disturbance Alone
>
>> If the actor's conduct is negligent as creating an unreasonable risk
>> of causing either bodily harm or emotional disturbance to another,
>> and it results in such emotional disturbance alone, without bodily
>> harm or other compensable damage, the actor is not liable for such
>> emotional disturbance.

Comment A to this Section provides that "[u]nder the rule stated in this Section, the negligent
actor is not liable when his conduct results in the emotional disturbance alone, without the bodily
harm or other compensable damage." *Banyas*, 437 A.2d at 1239.   The *Banyas* Court affirmed
dismissal of the plaintiff's negligent infliction of emotional distress claim on preliminary
objections because no physical harm was averred in the Complaint.

Similarly, in *Abadie v. Riddle Memorial Hospital*, 589 A.2d 1143 (Pa. Super. 1991), the
plaintiff was a patient at a hospital and overheard a raucous party amongst hospital employees.
The plaintiff filed an action alleging that defendant negligently caused her emotional distress.
Again relying on the Restatement (Second) of Torts § 436A, the court affirmed the dismissal of
her claim on preliminary objections.   The plaintiff failed to plead physical injury or physical
harm, rendering her claim insufficient as a matter of law.   *Id.*; *see also Boarts v. McCord*, 511
A.2d 204, 208-09 (Pa. Super. 1986) (stating that no cause of action for negligent infliction of
emotional distress exists in the absence of allegations regarding physical harm).

For the reasons set forth above, plaintiff Mort's negligence claim (Count III) must be
dismissed.

**D.**     **The false light invasion of privacy claim should be dismissed because plaintiffs fail to allege "publicity," a requisite element for a false light claim.**

In Count IV of Plaintiffs' Amended Complaint, plaintiff Mort asserts a "false light invasion of privacy" claim against Jameson.   Pennsylvania has adopted the Restatement (Second) of Torts regarding false light claims.  This claim provides:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Curran v. Children's Service Center, Inc.*, 578 A.2d 8, 12 (Pa. Super. 1990) (citing Restatement (Second) of Torts § 652E)).  Importantly, one of the requirements that must be met for a false light claim, and any invasion of privacy claim, is that the false information be given "publicity":

> The interest protected by this Section is the interest of the individual in not being made to appear before the public in an objectionable false light or false position. . . ." Restatement (Second) of Torts § 652E, comment b. **The rule is also limited by the requirement that the false information be given "publicity."** This "publicity" differs from the "publication" which is required in connection with liability for defamation. **"Publicity," as an element of the tort of invasion of privacy, "means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge**." Restatement (Second) of Torts, § 652D, comment a.

*Id.* at 12 (emphasis added); *see also Vogel v. W. T. Grant Co.*, 327 A.2d 133 (Pa. 1974) (citing W. Prosser, Handbook of the Law of Torts § 117, at 810 (4th ed. 1971)) ("The disclosure . . . must be a public disclosure, and not a private one; there must be, in other words, publicity. It is an invasion of his rights to publish in a newspaper that the plaintiff does not pay his debts, or to post a notice to that effect in a window on the public street, or to cry it aloud in the highway, but

not to communicate the fact to the plaintiff's employer or to any other individual, or even to a small group. . .").

Where publicity is lacking (or is insufficiently alleged), a plaintiff's false light claim is subject to dismissal.  For example, in *Vogel*, the plaintiffs asserted invasion of privacy claims against defendant, based on the defendant's disclosure of information regarding plaintiffs' debt obligations. *Vogel v. W. T. Grant Co.*, 327 A.2d 133 (Pa. 1974).  The Pennsylvania Supreme Court found publicity lacking where the information was communicated to the plaintiff's employer and three relatives.  *Id.* at 137-38.

Similarly, in *Burger v. Blair Medical Associates*, 964 A.2d 374, 379 (Pa. 2009), the court concluded that disclosure of the plaintiff's illegal drug use by a physician's office to the plaintiff's employer does not constitute "publicity" because it was divulged only to an employer and, thus, was not substantially certain to become public knowledge.

In this case, the drug test results were not communicated to the public at large, nor to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.  Indeed, plaintiffs admit that the drug test results were merely communicated by Jameson to CYS.  (Amended Complaint at ¶115.)  Jameson's communication of these results solely to CYS, rather than the public at large, renders dismissal of the false light claim appropriate. *See Burger, supra*; *Vogel, supra*.

**E.**   **The false light invasion of privacy claim should be dismissed because no false information was reported.**

In addition to the lack of publicity, no false information was publicized, another requisite element of a false light claim.   Plaintiffs concede that plaintiff Mort's drug test results were positive and that "[t]he confirmation test indicated the presence of morphine at a level of 501 ng/mL . . ." (Amended Complaint at ¶42.)   Accordingly, the information reported to CYS, i.e., a drug test indicating the presence of opiates was true, and cannot be deemed "false" information.

While a plaintiff may recover if they can demonstrate that only selected pieces of true information were publicized, casting plaintiff in a false light, "in order to prevail on this theory . . . [a plaintiff] must show discriminate publication of true statements, that is, [defendant] must have created a false impression by knowingly or recklessly publicizing selective pieces of true information." *Santillo v. Reedel*, 634 A.2d 264, 267 (Pa. Super. 1993).   However, selected pieces of true information were not conveyed.   Instead, the full and complete information – a positive drug test result – was conveyed.   Plaintiffs concede as much in their Amended Complaint.

The only information conveyed was true, and there was no type of discriminatory publication of information where only selective pieces of information were reported by Jameson. Accordingly, the false light claim must be dismissed.

Civil Action No. 10-01438

## IV.   CONCLUSION

For the reasons set forth above, plaintiffs' claims for conspiracy to violate plaintiffs' Fourteenth Amendment rights (Count II), negligence (Count III), and false light invasion of privacy (Count IV) must be dismissed pursuant to Rule 12(b)(6).


<u>      s/ John C. Conti                      </u>
John C. Conti
PA I.D. # 28071

Richard J. Kabbert
PA I.D. # 85521

J. Brian Lynn
PA I.D. # 204086

DICKIE, MCCAMEY & CHILCOTE, P.C.
Firm #067
Two PPG Place, Suite 400
Pittsburgh, PA  15222-5402
(412) 281-7272

Attorneys for Defendant,
Jameson Health System, Inc.

## CERTIFICATE OF SERVICE

I, Richard J. Kabbert, Esquire, hereby certify that a true and correct copy of the foregoing Brief in Support of Motion to Dismiss has been filed this 30th day of December, 2010, by electronic filing through the Court's CM/ECF electronic filing system, to be served by operation of the Court's electronic system upon the following:

Antoinette C. Oliver, Esquire
Patricia L. Dodge, Esquire
Quinn A. Johnson, Esquire
Meyer, Unkovic & Scott, LLP
1300 Oliver Building
Pittsburgh, PA  15222
*Attorney for Plaintiffs*

Sara Rose, Esquire
ACLU
313 Atwood Street
Pittsburgh, PA  15214
*Attorney for Plaintiffs*

Marie Milie Jones, Esquire
Meyer, Darragh, Buckler, Bebenek & Eck
600 Grant Street
U.S. Steel Tower, Suite 4850
Pittsburgh, PA  15219
*Attorney for Lawrence County Children and*
*Youth Services; Lawrence County; and Chrissy*
*Montague*

DICKIE, MCCAMEY & CHILCOTE, P.C.


       /s/  Richard J. Kabbert
             Richard J. Kabbert

Attorneys for Defendant,
Jameson Health System, Inc.